UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DONALD LINDHORST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:17-CV-2244-SPM |
| | ) |
| | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Nancy A. Berryhill, Deputy Commissioner for Operations, Social Security Administration (the "Commissioner"), denying the application of Plaintiff Donald Lindhorst ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 7). Because I find the decision denying benefits was not supported by substantial evidence, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

1

## I. FACTUAL BACKGROUND[1]

At the hearing before the Administrative Law Judge ("ALJ"), held on March 11, 2016, Plaintiff testified as follows. Plaintiff was born on November 24, 1964, and he was 51 years old as of the date of the hearing. (Tr. 43). Plaintiff did not go to school after the tenth grade and has no vocational training. (Tr. 44). In 2005 and 2006, Plaintiff's brother-in-law got him a job at Specialty Plastics as a material worker, and he did it full-time for two years. (Tr. 56-57). The job ended because his legs and back were hurting constantly. (Tr. 57). After that, he did not try to look for a job, because he was in so much pain that he just wanted to stay in bed with a heating pad. (Tr. 58).

Plaintiff filed for disability because of his back pain and knee pain. (Tr. 47). Because of the back pain, he cannot do anything; if he bends over, he normally topples over unless he is holding onto something. (Tr. 47). He cannot walk for long without having to sit down; his back starts hurting or his knees start shaking, and he is afraid he will fall. (Tr. 47). Plaintiff does not leave the house except for doctors' appointments, because he is so afraid of falling. (Tr. 59-60). He can stand for about ten minutes a time and can walk for less. (Tr. 47). The pain only gets better when he puts a new Fentanyl patch on; it is supposed to last for three days, but by the beginning of the third day, it is wearing off. (Tr. 48).

Plaintiff's Fentanyl patches cause drowsiness. (Tr. 44, 49). Plaintiff was falling asleep during the first part of the hearing (before his testimony) because of his Fentanyl patches; he testified that that happens all the time at home. (Tr. 44). He stated that with the Fentanyl patch, he

---

[1] Although Plaintiff has mental and physical impairments, Plaintiff does not challenge any aspects of the ALJ's assessment of his mental impairments. Thus, the Court will focus primarily on Plaintiff's physical impairments.

could not work, because he cannot keep his eyes open long enough. (Tr. 49). Plaintiff does not cook or do any household chores because he cannot stay awake long enough and because it is too hard for him to stand and walk. (Tr. 49-50). He does not have a driver's license because he is afraid he will pass out behind the wheel and kill someone. (Tr. 44). Plaintiff naps 85% of the day. (Tr. 60). He is in bed and asleep by 6:00 every day. (Tr. 60-61).

Plaintiff had two heart attacks the year before the hearing. (Tr. 50). He gets panic attacks related to being worried about his heart stopping. (Tr. 51). He takes medications for his anxiety and panic attacks. (Tr. 51).

With respect to Plaintiff's medical treatment records, the Court accepts the facts as presented in the parties' statements of facts and responses. The Court will discuss specific facts in the record as needed in the discussion below.

## II. PROCEDURAL BACKGROUND

On June 11, 2014, Plaintiff filed his application for SSI, alleging that he had been unable to work since January 1, 2007. (Tr. 173-78). His application was initially denied. (Tr. 98-104). On July 2, 2014, Plaintiff filed a Request for Hearing by an ALJ. (Tr. 105-07). On March 11, 2016 Plaintiff amended his alleged onset date to March 16, 2015. (Tr. 188). After a hearing, the ALJ issued an unfavorable decision on April 15, 2016. (Tr. 7-20). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 171). On June 16, 2017, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

### III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. § 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20

C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 416.920(e), 416.945(a)(1). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v), 416.920(g); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff had not engaged in substantial gainful activity since June 3, 2014, the application date. (Tr. 12). The ALJ found that Plaintiff had the severe impairments of degenerative disc disease, coronary artery disease status post myocardial infarction and coronary stent thrombosis, affective disorder, anxiety disorder, and personality disorder. (Tr. 12). The ALJ further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 13). The ALJ found that Plaintiff had the following RFC:

> I find that the claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except as follows: He can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps or stairs. He can occasionally stoop, crouch, kneel, or crawl. He must avoid concentrated exposure to excessive vibration. He must avoid exposure to all moving machinery, such as moving factory-type machinery, and must avoid all exposure to unprotected heights. He is capable of performing simple and routine tasks and having brief and superficial interaction (less than occasional) with coworkers and the general public. He can have occasional contact with supervisors.

(Tr. 15). The ALJ found that Plaintiff was unable to perform his past relevant work as a forklift operator. (Tr. 18). However, relying on the testimony of a vocational expert, she found that a significant number of jobs existed in the national economy that Plaintiff could perform, including housekeeper, laundry worker, and electronics assembler. (Tr. 19). The ALJ concluded that Plaintiff had not been under a disability since June 3, 2014, the date the application was filed. (Tr. 20).

## V. DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds: (1) that the ALJ erred in finding Plaintiff's knee impairment was non-severe; (2) that the RFC is not supported by substantial evidence; and (3) that the ALJ failed to properly evaluate Plaintiff's pain.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ Did Not Err in Finding That Plaintiff's Knee Impairment Was Non-Severe

"It is the claimant's burden to establish that his impairment or combination of impairments are severe." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). To be considered severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). *See also* Social Security Ruling (SSR) 96–3p, 1996 WL 374181, at *1 (July 2, 1996). Additionally, to support a finding of disability, a severe impairment

must have lasted or must be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707. The Eighth Circuit has noted that "[s]everity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and [the Court has] upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Id.* at 708 (citation omitted).

After review of the record, the Court finds substantial evidence to support the ALJ's determination that Plaintiff's knee problem was not a severe impairment. A review of the record shows that Plaintiff's complaints of knee pain were intermittent, that Plaintiff's knee pain responded to treatment, and that objective findings related to Plaintiff's knees were generally normal or mild. On March 16, 2015 (Plaintiff's alleged disability onset date), Plaintiff complained to his doctor of back pain, but not knee pain. (Tr. 272). On May 4, 2015, Plaintiff again went to his doctor complaining of chronic lumbar back pain, but again he did not mention knee pain. (Tr. 264). On the same date, Plaintiff went to a pain management clinic, where he reported back pain that did not travel back down the legs, pain in his right knee, and numbness off and on in the right leg. (Tr. 324). He reported being able to walk for 50 yards and stand for about five to ten minutes before sitting down. (Tr. 324). He described his pain as throbbing and at a level of 8. (Tr. 324). He had an antalgic gait and several abnormal findings related to his lower back; however, no knee-related examination findings were made, and no specific knee-related diagnoses were made. (Tr. 326-27). Plaintiff returned to the pain management clinic on May 18, June 9, July 7, August 4, September 1, and September 30, 2015; at each visit, he complained of back pain but not knee pain, and at each visit no knee-related findings were made and no specific knee-related diagnoses were

made. (Tr. 320-22, 315-18, 309-12, 303-06, 298-302, 293-96). Plaintiff's next mention of knee pain was at a visit on November 25, 2015, when Plaintiff presented with lower back pain and with "bilat[eral] knee pain which has been worse since the weather got colder." (Tr. 288). However, at the same visit, Plaintiff reported that pain medications were "controlling pain adequately." (Tr. 288). On examination, Plaintiff's knees had tenderness on jointlines bilaterally and he had a painful range of motion; however, his knees had no erythema, edema, or gross deformation; were normal-appearing with no ecchymosis, erythema, swelling, or signs of external injury; were stable in all ligament plans; and had only mildly restricted flexion and extension. (Tr. 291). He was diagnosed with "knee pain, bilateral" and given Voltaren gel samples. (Tr. 291). On December 22, 2015, Plaintiff returned for follow up, reporting that the Voltaren gel samples given at the last visit had given him "good relief of knee pain" and he wanted a prescription. (Tr. 282). Knee examination findings were the same as at the last visit, and Plaintiff was diagnosed with osteoarthritis of both knees. (Tr. 285).

In light of Plaintiff's only very occasional reports of knee pain to his treating doctors, as well as the evidence that his knee pain improved with treatment, the Court finds substantial evidence in the record to support the ALJ's finding that Plaintiff's knee impairment did not significantly limit his ability to do basic work activities and thus was not a severe impairment. Thus, the Court finds no reversible error at Step Two.

### C. Remand is Required Because the RFC Is Not Supported by Any Medical Evidence Addressing Plaintiff's Ability to Function in the Workplace

Plaintiff's second argument is that the ALJ's RFC finding is not supported by substantial evidence. Plaintiff argues that the ALJ determined that Plaintiff retained the RFC for light work based on a credibility finding and not based on medical evidence. Plaintiff also argues that it is

unclear how the ALJ concluded from the medical evidence that Plaintiff was capable of performing light work.

A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, RFC "is a medical question." *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001). Thus, although the ALJ is not limited to considering medical evidence, "some medical evidence 'must support the determination of the claimant's residual functional capacity, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" *Id.* at 712 (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). An RFC assessment that is "not properly informed and supported by 'some medical evidence' in the record" cannot stand. *Id.*

After reviewing the ALJ's decision and the medical records, the Court does not find any medical evidence that addresses Plaintiff's ability to function in the workplace or that supports the ALJ's finding that Plaintiff is capable of performing the demands of light work with some additional limitations. The record contains no medical opinion evidence and no report from a consultative examiner. Although the ALJ summarized some of Plaintiff's treatment notes and some of the objective medical evidence, none of that evidence addresses Plaintiff's ability to function in the workplace, and the ALJ does not explain how any of that evidence supports his conclusion that Plaintiff could perform the demands of light work.

The Court recognizes that the absence of medical opinion evidence does not necessarily require remand. In some cases, mild or unremarkable objective medical findings and other evidence may constitute sufficient medical support for an RFC finding, even in the absence of any medical opinion evidence directly addressing the Plaintiff's ability to function in the workplace. *See, e.g.*, *Hensley v. Colvin*, 829 F.3d 926, 929-34 (8th Cir. 2016) (upholding the ALJ's finding that the plaintiff could perform sedentary work despite the absence of specific medical opinion evidence; finding "adequate medical evidence of [the plaintiff's] ability to function in the workplace" where the plaintiff's treating physician found that the plaintiff was in no acute distress and had a normal knee exam and gait; another physician found that his knee assessment was normal and he had "full knee range, good lower limb and spinal flexibility"; and the plaintiff reported greatly reduced or nonexistent knee and back pain after treatment); *Steed v. Astrue,* 524 F.3d 872, 876 (8th Cir. 2008) (upholding the ALJ's finding that the plaintiff could perform light work based on largely mild or normal objective findings regarding her back condition, despite the fact that the medical evidence was "'silent' with regard to work-related restrictions such as the length of time she [could] sit, stand and walk and the amount of weight she can carry"); *Thornhill v. Colvin*, No. 4:12–CV–1150 (CEJ), 2013 WL 3835830, at *12 (E.D. Mo. July 24, 2013) (holding that medical records supporting the ALJ's statement that "physical examinations have been essentially unremarkable and reveal normal independent gait with no evidence of spine or joint abnormality or range of motion limitation or muscle tenderness" constituted medical evidence in support of a finding that the claimant could perform medium work).

Here, however, the record does not contain generally mild or unremarkable objective findings. The record contains a combination of normal and abnormal objective findings, with several consistent and significant abnormal findings that would appear to be inconsistent with an

ability to perform light work. Plaintiff's pain management records consistently indicated that his gait was antalgic, favoring the right side; that he had decreased left sacroiliac joint mobility; that he had decreased curvature of the spine; that he had tenderness and muscle spasms in the paravertebral muscles; that he had pain elicited with paraspinous and spinous percussion; that he had pain palpable over the SI joints bilaterally; that he had reduced lumbar range of motion; that he had positive SI joint exam provocative tests; and that he had a straight leg raising test "positive at 45 degrees bilaterally." (Tr. 284-85, 290-91, 295-96, 301, 306, 311-12, 317-18, 322, 326-27).[2] Plaintiff's physicians referred Plaintiff to a pain management clinic (Tr. 265) and a chiropractor (Tr. 273), and they consistently treated his pain with narcotic and non-narcotic pain medications, including a Buspar patch and a Fentanyl patch. (Tr. 48, 265, 273, 285, 296, 291, 301, 306, 312, 318, 324). It appears that they also recommended lumbar injections but that Plaintiff was unable to have them because of a contraindication due to another medication he was taking. (Tr. 288, 318). Although Plaintiff sometimes reported some improvement in his symptoms with medication, he usually reported that the analgesia he received from treatment was either "none" or "mild," and he consistently reported that that his pain was at a 7 or 8 (out of 10). (Tr. 282, 288, 293, 298, 303, 309, 315, 320). He also consistently reported that his pain was sufficiently severe to interfere with his daily chores. (Tr. 282, 288, 293, 298, 303, 309, 315, 320).

The ALJ's very brief discussion of the RFC assessment does not make it clear how the medical or other evidence supports a finding that Plaintiff can perform light work. The ALJ noted a few normal or mild findings in the record, including a finding of no pain with a full range of

---

[2] The straight leg raise test results reported in the record are somewhat confusing, as they generally state, "Straight leg raising test: negative bilaterally, Positive at 45 degrees bilaterally." (Tr. 290, 295, 301, 306, 312, 318, 327). It is unclear to the Court whether these notes represent an inconsistent recording of the test results or represent different tests with different results. The ALJ noted only the negative result. (Tr. 16).

motion at one visit; findings of normal motor strength, sensation, and reflexes; and a straight leg raise test that was negative. (Tr. 16). The Commissioner cites similar isolated findings in her brief. However, neither the ALJ nor the Commissioner explain how these findings relate to the ability to walk, stand, sit, or perform other work-related activities. It is not apparent to the Court how those findings support an ability to do light work, particularly in light of the many significant and consistent abnormal findings discussed above, including the consistent finding of an antalgic gait by Plaintiff's pain management treatment providers, as well as the side effects of Plaintiff's medications. The ALJ also noted that Plaintiff had reported improvements in his pain with medication and that he wished to continue with his current regimen. (Tr. 16). However, the ALJ did not discuss the fact that even with that improvement, Plaintiff was still reporting pain at a 7 out of 10 that interfered with household chores and that Plaintiff was still found on examination to have an antalgic gait.

In sum, because the ALJ's RFC assessment was not informed and supported by "some medical evidence" in the record that addressed his ability to function in the workplace, this case must be reversed and remanded for further consideration. *See Hutsell*, 259 F.3d at 712. On remand, the ALJ may need to further develop the record regarding Plaintiff's ability to function, perhaps by contacting one of his treating physicians or by obtaining the services of a consultative examiner.

### D. The Assessment of Plaintiff's Subjective Complaints of Pain

Plaintiff's final argument is that the ALJ failed to make a proper assessment of the Plaintiff's subjective complaints of pain. Because the ALJ's re-evaluation of the medical evidence on remand may affect the ALJ's analysis of Plaintiff's subjective complaints, the Court need not address this issue. However, the Court notes that if the ALJ discounts Plaintiff's subjective complaints on remand, the ALJ should consider the factors set forth in 20 C.F.R. § 416.929(c) and

should make an express "determination explaining the reason for discrediting the complaints." *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (quotation marks omitted). The Court notes that a proper analysis of these factors is particularly important in a case such as this one, which involves primarily Plaintiff's subjective complaints of pain.

## VI. CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g). A separate judgment will accompany this Memorandum Opinion.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of September, 2018.